ASHLEY R. ANDREWS and ASHLEY R. ANDREWS, P.C.,
Plaintiffs

v.

GOVERNMENT OF THE VIRGIN ISLANDS, VIRGIN IS-
LANDS PORT AUTHORITY, ROGGE GENERAL CONTRAC-
TORS, G.m.b.h. and ROGGE GENERAL CARIBBEAN CON-
STRUCTION CO., INC., Defendants

Civil Action No. 87-421

District Court of the Virgin Islands

Div. of St. Thomas and St. John

August 14, 1990

RAY BECKERMAN, ESQ. (ROSS & CANNON), New York, N.Y., and EDGAR D. ROSS, ESQ. (ROSS & CANNON), St. Croix, V.I., *for plaintiffs*

GODFREY R. DECASTRO, ESQ., Attorney General (Department of Justice), by ROSALIE SIMMONDS BALLENTINE, St. Thomas, V.I., *for defendant Government of the Virgin Islands*

PATRICIA M. FITCH, ESQ., Virgin Islands Port Authority, St. Thomas, V.I., *for defendant Virgin Islands Port Authority*

CARL G. ROBERTS, ESQ. (DILWORTH, PAXSON, KALISH & KAUFF-MAN), Philadelphia, PA., *for defendants Government of the Virgin Islands and the Virgin Islands Port Authority*

BARRY R. FISHER, ESQ. (HALL, DICKLER, LAWLER, KENT & FRIEDMAN), New York, N.Y. and MICHAEL A. JOSEPH, ESQ., St. Croix, V.I., *for defendants Rogge General Contractors G.m.b.h. and Rogge General Caribbean*

WOLIN, *District Judge*

In times when judicial resources are increasingly at a premium, judicial patience with parties who obstruct rather than assist the prosecution of claims is put to the greater test. Although trial courts must be cautious lest their concerns over crowded dockets override considerations of fairness, in some cases courts cannot and should not tolerate parties' behavior. This is such a case.

This is an action for breach of contract and tortious interference with a contractual relationship. Before the Court are motions of all defendants for summary judgment under Fed. R. Civ. P. 56(c), or for dismissal under Fed. R. Civ. P. 41(b) for want of prosecution and violation of court rules and court orders. For the reasons that follow, the Court will grant defendants' motion and dismiss plaintiffs' complaint with prejudice.

## I. BACKGROUND

In December 1983, the Government of the Virgin Islands ("the Government") and the Virgin Islands Port Authority ("VIPA") each

entered into turn-key contracts[1] with Rogge General Contractors, G.m.b.h. ("Rogge") and Rogge General Caribbean Construction Co., Inc. ("Rogge Caribbean"). Under the contracts, Rogge and Rogge Caribbean agreed to construct certain schools and homes for the Government, and a seaport facility and airport for VIPA. To secure payment for these projects, the Government placed in escrow for Rogge and Rogge Caribbean over $54 million, which were the proceeds of bonds issued specifically to finance the projects. Under the escrow agreement, these funds could not be released without both parties' consent.

By June 1987, nearly three and one-half years after the contract was awarded, Rogge and Rogge Caribbean had not obtained construction financing nor commenced construction of the projects as required under the contracts. As a result of the delay and inability to finance the projects, the Government and VIPA initiated suit against Rogge and Rogge Caribbean ("the Rogge action"), seeking a declaration that the contracts had been breached and were invalid, and also a release of the escrow funds. Rogge and Rogge Caribbean filed an answer and counterclaims, contending that the Government and VIPA had prevented the performance of and breached the agreement. They sought approximately $20 million in compensatory damages.

Plaintiffs Ashley R. Andrews ("Andrews"), a practicing New York lawyer, and Ashley R. Andrews, P.C., his law firm, filed a motion to intervene in the Rogge action in August 1987, claiming an interest in the suit based on several contracts they had entered with Rogge. Andrews sought to uphold the validity of the Turn-key contracts and protect his right to commissions and fees to be paid by Rogge in installments as the Turn-key contracts were performed. All parties opposed the motion, and it was denied by Chief Judge Christian in November 1987, who found that Andrews did not have a sufficient interest in the outcome of the suit. The action was subsequently settled by the parties in November 1988, and dismissed by the court on December 2 of that year. The ruling denying Andrews' motion to intervene was affirmed by the Third Circuit in an unpublished decision dated December 16, 1988.

---

[1] A "turn-key contract" is a contract "in which the builder agrees to complete work of building and installation to point of readiness for occupancy." Black's Law Dictionary 1359 (5th ed. 1979).

On November 16, 1987, after the motion to intervene in the Rogge action was denied, Andrews commenced this lawsuit based substantially on the same contracts relied upon in the motion to intervene. The complaint contains four counts. Counts one and four assert claims against the Government and the VIPA, and counts two and three assert claims against Rogge and Rogge Caribbean. Count one sought a declaratory judgment that the Turn-key contracts between Rogge and the Government and VIPA were valid and enforceable. The second and third counts assert claims against Rogge and Rogge Caribbean for breach of contract and for payment of services rendered. In the fourth count of the complaint, plaintiffs assert a claim against the Government and VIPA for tortious interference with their contractual relationship with Rogge, seeking compensatory and punitive damages. This count alleges that the Government intentionally terminated its contracts with Rogge and Rogge Caribbean for the purpose of interfering with plaintiffs' agreements with Rogge. All the defendants filed motions in lieu of answers.

In an order dated December 28, 1987, after considering a joint motion regarding Count Four by the Government and VIPA, Chief Judge Christian granted the Government's request to strike the punitive damages claim and to limit compensatory damages to $25,000 in accordance with the Virgin Islands Torts Claim Act. In that order, the court reserved decision on VIPA's request to strike the punitive damages claim asserted against it.

On December 29, 1987 Rogge and Rogge Caribbean filed a motion to dismiss or alternatively to stay the prosecution of counts one, two and three. One day later, Andrews filed a motion to consolidate his action with the Rogge action and sought to sequester any settlement funds that resulted in the Rogge action. In a Memorandum and Order dated March 30, 1988, Chief Judge Christian: (1) denied the motion to consolidate because of a lack of common issues, and so as not to delay resolution of the Rogge action; (2) denied without prejudice the motion to sequester the settlement funds as unsupported by plaintiffs' offer of proof; (3) granted the motion to dismiss the first claim substantially for the reasons that leave to intervene was previously denied; and (4) granted the motion to stay proceedings in the matter while the Rogge action was pending.

Apparently prompted by news of an impending settlement between the parties, Andrews renewed the request to sequester settlement funds in the Rogge action in a motion filed on October 31, 1988.

On November 2, 1988, Andrews additionally sought a writ attaching those funds. Rogge, Rogge Caribbean, the Government, and VIPA all opposed Andrews' motions. After hearing oral argument, Chief Judge O'Brien denied relief to Andrews in an order dated November 15, 1988. Two weeks later, in an order dated November 29, 1988, Chief Judge O'Brien vacated the stay of proceedings previously entered in this case. Soon thereafter, in December 1988, all defendants filed answers to Andrews' complaint. Rogge and Rogge Caribbean additionally filed counterclaims.

From November 29, 1988, the day that the stay in this action was lifted, until July 4, 1990, plaintiffs took no affirmative steps to move their case forward. Not a single document was requested by plaintiffs during this period, nor interrogatory served, deposition noticed or pleading or motion filed.

More than one year after the stay was lifted, on December 21, 1989, in an attempt to prompt some action on plaintiffs' part, the Government and VIPA filed a joint motion for summary judgment or alternatively to dismiss the action for want of prosecution. A similar joint motion for summary judgment or to dismiss was filed by Rogge and Rogge Caribbean in January 1990. The following facts form the basis for the Court's decision today.

On January 31, 1990, after plaintiffs failed to respond to either of the outstanding motions within the time prescribed by court rule, the Government and VIPA filed a motion to deem their outstanding unopposed motion conceded. This motion was not responded to by plaintiffs.

A Pre-trial Status/Settlement Conference was held by this Court on St. Thomas on February 8, 1990, to expedite a prompt resolution of the outstanding motions and schedule further proceedings. Plaintiffs' principal counsel did not attend this meeting, though neither plaintiffs nor their counsel notified the Court that counsel would not be in attendance. Instead, the only appearance on behalf of plaintiffs was that of their local Virgin Islands counsel, who disclaimed any authority to act on behalf of plaintiffs, and who appeared only for the purpose of seeking an extension of time in which to reply to the defendants' motions. Andrews, although he did not participate in the meeting, was present outside the conference room, and hence was well aware that the meeting was scheduled for that day.

At the meeting, the Court agreed to give plaintiffs a 21-day extension of time to respond to the defendants' motions, running from the

date that the Case Management Order resulting from the meeting was signed. As a result of giving all parties an opportunity to comment on the order, the Case Management Order was not signed until February 26, 1990. The order provided that plaintiffs were to pay $1000 to counsel for the Government and VIPA, and $1000 to counsel for Rogge and Rogge Caribbean before filing their response to the motions. These payments were ordered to reimburse defendants' counsel for having to make an unnecessary trip to the Virgin Islands for a meeting that plaintiffs knew would not be attended by their own counsel. The courtesy of a simple telephone call would have prevented this waste of everyone's time. Under the Order of February 26, plaintiffs response was due on March 19, 1990, nearly forty days after the status conference was held. Although defendants' motion to deem their summary judgment motions conceded was denied in the order, plaintiffs were specifically warned in that order that should they fail to comply with its terms, the Court would again entertain defendants' motion.

Additionally, the February 26th Order required plaintiffs to provide the Court with a typed translation of an illegible handwritten contract. That contract forms an essential part of plaintiffs' claims, and was necessary to a disposition of the pending summary judgment motion. The translation was to be certified as correct by Andrews. As of the date of this opinion, plaintiff has not complied with this court order.

Meanwhile, plaintiffs' principal counsel, from a New York law firm, filed a motion on March 16, 1990 to withdraw from representation. He additionally sought a declaration recognizing the validity of common law and statutory liens for fees incurred in connection with this case. Supporting exhibits for this motion fully document Andrews' recalcitrance and contumacious behavior even as to his own counsel. The exhibits consist of correspondence between counsel and Andrews that is replete with Andrews' failure to pay counsel fees, some due for over one year (Motion of Norman Roy Grutman to Withdraw as Counsel, Ex. C, E, H); Andrews' consistent failure to communicate with counsel (id., Ex. H, J, K); broken appointments with counsel[2] (id., Ex. H); and a complete failure on Andrews' part to provide

---

[2] Ironically, in one letter Andrews explained his failure to maintain scheduled appointments with counsel concerning litigation of his own claims by stating that he was in court representing his clients. Motion to Withdraw as Counsel, Ex. G.

counsel with documents and other evidence necessary to prosecute his claims. Id., Ex. J.

As a result of his frustration and in an effort to minimize his losses, counsel thus sought to be relieved from his representation of plaintiffs. The Court granted counsel's motion on May 14, 1990. Although it was not until that date that counsel was formally withdrawn, in fact, Andrews had sent a letter to counsel on February 16, 1990, advising counsel to "cease and desist from rendering any further legal services in any capacity" in this action. Id., Ex. N. Thus, to the extent that there may be a question, and the Court does not find that there is, as to whether Andrews or his counsel was to blame for any failure to prosecute Andrews' claims up to this point in time, it is beyond question that blame cannot be placed on anyone but Andrews for events that occurred after February 16, 1990.

Counsel for Rogge and Rogge Caribbean informed the Court that he received a payment of $1000 on March 22, 1990, three days later than was required by the Case Management Order. Letter of March 22, 1990 from Barry R. Fischer to Judge Alfred M. Wolin. On that same date, this Court was informed by counsel for the Government and VIPA that neither a response nor payment of $1000 was received from plaintiffs. Letter of March 22, 1990 from Carl G. Roberts to Judge Alfred M. Wolin. Counsel again requested that the action be dismissed for want of prosecution. Id.

On April 16, 1990, nearly one month after the Case Management Order required plaintiffs to serve a response to the defendants' motions, plaintiffs' filed yet another motion for an extension of time in which to file a response. Letter of April 16, 1990 from Ray Beckerman to Judge Alfred M. Wolin. This time they sought six additional weeks. In a cover letter to the Court from plaintiffs' recently retained counsel, counsel "respectfully request[ed] an extension of time to enable [him] to review the file, consult with predecessor counsel and co-counsel, apply for admission to the Court, and prepare, serve, and file opposition papers." All defendants opposed this request, as their motions had gone unanswered for over four months. In their opposition papers, the Government and VIPA stated that they still had not received the $1000 payment due to them on March 19, 1990 under the Case Management Order.

---

Another excuse was that Andrews was out of the country and could not be reached. Id., Ex. F, J, K.

After considering plaintiffs' request for another extension of time, this Court entered an order on May 9, 1990 requiring plaintiffs to file any opposition to the outstanding motions no later than May 31, 1990. This extension, if measured from the date of the request, April 16, 1990, constituted a period of time longer than the six weeks requested. The Court further ordered plaintiffs to pay VIPA $1000, as earlier ordered on February 26, 1990, no later than May 16, 1990. Lastly, the Court ordered that in the event that payment was not made on time, the motions would be considered unopposed and granted in favor of defendants.

Payment was made by Andrews in compliance with the May 9, 1990 order. Letter of June 14, 1990 from Carl G. Roberts to Judge Alfred M. Wolin. Andrews' response to the motions for summary judgment and dismissal for failure to prosecute, filed on May 31, 1990, however, was totally inadequate. Filed with the Court was an "affidavit" of Ashley R. Andrews that consists for the most part of a reiteration of the conclusory allegations in the complaint. The "affidavit" also contains, by way of excuse, unsubstantiated statements placing total blame for the delays and violations of court orders on plaintiffs' former counsel. Affidavit of Ashley R. Andrews, dated May 29, 1990, ¶¶ 6, 8, 32. "Supporting" the "affidavit" are copies of documents, most of which were already submitted to the Court by defendants five months earlier in support of their motions for summary judgment and dismissal. Noticeably absent from plaintiffs' response to the motion, as required by Virgin Islands District Court Local Rule 6(f), is a "[b]rief [ ] . . . contain[ing] a concise statement of reasons in opposition to the motion, and a citation of authorities upon which the respondent relies."[3]

In brief, the Court and defendants were subjected to a continuing pattern of delay and inadequate attention to this case on the part of plaintiffs. As quoted above, the last extension of time was specifically requested so that plaintiffs' new counsel could review the file and prepare and serve proper opposition papers. See Letter of April 16, 1990 from Ray Beckerman to Judge Alfred M. Wolin. Counsel had more time than was requested to prepare a response to the motions.

---

[3] Local Rule 6(i) provides that "[u]pon failure of respondent to file a response *and brief* in opposition to the motion, the court may treat the motion as conceded and render whatever relief is asked for in the motion." (emphasis added). For reasons explained later in this opinion, the court chooses not to invoke this Rule, but rather will dismiss the action under Fed. R. Civ. P. 41(b).

Yet nothing approaching a proper response to motions for summary judgment and dismissal was submitted by plaintiffs or counsel. Instead, only a conclusory affidavit ending with a plea for yet one more chance to move this case forward was submitted to the Court.[4]

## II. DISCUSSION

### A. *The Applicable Law*

■ Rule 41(b) of the Federal Rules of Civil Procedure provides, in relevant part:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.

Fed. R. Civ. P. 41(b). To dismiss a complaint with prejudice as sanction for dilatory conduct is a "drastic" measure "reserved for comparable cases." Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 867–68 (3d Cir. 1984). Nevertheless, as the Supreme Court has stated,

> the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S. Ct. 2778, 2781 (1976).

■■ A district court's decision to invoke this sanction is discretionary. Scarborough v. Eubanks, 747 F.2d 871, 875 (3d Cir. 1984) (applying abuse of discretion standard of review). In deciding defendants' motion to dismiss plaintiffs' complaint for want of prosecution pursuant to Fed. R. Civ. P. 41(b), this Court must weigh and balance the six factors provided by the Third Circuit in Poulis. Scarborough, 747 F.2d 871 (applying Poulis test to Rule 41(b) dismissal). Those factors are:

---

[4] While this motion was pending, on July 4, 1990, plaintiffs served on Rogge and Rogge Caribbean a request for documents. This represents the first affirmative act undertaken by plaintiffs in this action since November 1988. On the defendants' objection to the request as unduly broad and burdensome, plaintiffs filed a motion with this court on July 25, 1990 seeking to strike Rogge's and Rogge Caribbean's answer "for failure to comply with discovery." As a result of today's decision, plaintiffs' recent motion is moot and will be dismissed.

(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Poulis, 747 F.2d at 868. The Court need not find that all of the Poulis factors weigh against the opposing party to find dismissal is warranted. Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988), cert. denied, 488 U.S. 1006, 109 S. Ct. 786 (1989).

Before deciding a motion to sanction a party with dismissal, the Court must ensure that the *party* against whom it is being sought has actual notice of the motion. Dunbar v. Triangle Lumber & Supply Co., 816 F.2d 126, 129 (3d Cir. 1987). The purpose of this requirement is to ensure that parties are given an opportunity to defend themselves against the consequences of their attorney's misconduct. Curtis T. Bedwell & Sons v. International Fidelity Ins. Co., 843 F.2d 683, 693 n.19 (3d Cir. 1988). It is beyond contention that plaintiffs were fully aware that this motion was pending.

The court will address each Poulis factor separately.

B. *Application of the Poulis Factors*

1. *Andrews' Personal Responsibility*

The Court finds that Andrews is primarily responsible for the repeated violations of court rules and court orders that have occurred in this action. Any argument that plaintiffs' counsel is responsible in any significant way for this conduct is totally unsupported in the record. To the contrary, the record indicates that Andrews had treated his own counsel with as little respect as he has treated everyone else involved in this case. Moreover, Andrews terminated his relationship with counsel on February 16, 1990. Motion of Norman Roy Grutman to Withdraw as Counsel, Ex. N (Letter of February 16, 1990 from Ashley R. Andrews to Norman Roy Grutman dismissing Grutman as counsel). Because most of the behavior on which the Court bases its decision occurred after that date, it will not linger long on the argument that plaintiff is not to blame.

Significant to the Court's finding is the fact that plaintiff Andrews is a practicing New York lawyer; the other plaintiff in this case is Andrews' law firm. Thus, unlike plaintiffs in most cases, Andrews

cannot claim that he is ignorant of the basic precepts of legal practice. His transgressions had little to do with any intricacy of local practice or law. For the most part, the delays and violations of court orders resulted from a callous disregard for the Court's authority to impose deadlines on the parties before it.

This Court required plaintiffs, not their counsel, to pay counsel fees to defendants for the failure to notify them or the Court that plaintiffs were not prepared to attend the February 8, 1990 Status/Settlement Conference in the Virgin Islands. See Order of February 26, 1990. The sanction was based on a finding that the failure to extend this basic courtesy was the fault of plaintiffs, not their counsel. Although, as later revealed, plaintiffs' relationship with their counsel had eroded considerably by this time, this is not a case in which helpless plaintiffs were unaware that they were abandoned by their lawyer. First, if an abandonment occurred, it was plaintiffs' abandonment of their counsel. Second, Andrews knew of the meeting, as evidenced by his physical presence in the courthouse that day. Knowing that all was not well between him and his counsel, and knowing that he was not otherwise prepared to attend the conference, Andrews nevertheless made no effort to inform the other parties and the Court of those facts.

On the day of the Status Conference, plaintiffs' response to outstanding motions was already long overdue. Nevertheless, on February 26, 1990, despite plaintiffs' conduct with respect to the conference, the Court issued a Case Management Order that granted an extension of nearly forty additional days from the date of the conference to file the already overdue response. Plaintiffs did not comply in a timely manner with any aspect of this order. Despite being granted an additional opportunity to get this litigation on track, plaintiffs have failed to take this Court or this case seriously.

2. *Prejudice to Opponents*

"Prejudice" under the Poulis test does not refer to "irremediable" harm. Curtis T. Bedwell, 843 F.2d at 693. Rather, it can consist of the extra costs of repeated delays and filing of motions necessitated by the improper behavior on the part of plaintiffs. Id. at 693–94; Poulis, 747 F.2d at 868.

The continual failure of plaintiffs to prosecute their claims or cooperate and comply with court orders has put an unnecessary burden on defendants, as well as on the Court. The present motion to

dismiss for failure to prosecute, filed more than one year after a stay of proceedings was lifted, was prompted by plaintiffs' failure to take even one step to move this case forward. Defendants filed their motions in an attempt to force action on plaintiffs' part. Yet it took plaintiffs five months, after repeated efforts by defendants in the form of telephone calls, letters to the Court and additional motions seeking to have the motions for summary judgment deemed conceded, and several court orders, before plaintiffs finally submitted papers to this Court in response to those motions. Those papers were wholly inadequate. Given the great length of time in which to prepare them, this Court finds this behavior inexcusable. The Court finds that defendants were prejudiced in the sense that they were unnecessarily forced to incur costs in an effort to compel plaintiffs to comply with basic procedural requirements.

### 3. *History of Dilatoriness*

■ As pointed out in Curtis T. Bedwell, "[i]n Poulis, one failure to answer interrogatories and a failure to file a pretrial statement were sufficient to support a dismissal." 843 F.2d at 694. This Court finds that plaintiffs' conduct in this case was far more egregious than occurred in Poulis. Numerous time deadlines were ignored and other court orders were violated. Plaintiffs sole compliance with a time limit set by this court—the final May 31, 1990 deadline for filing a response—was marked by a failure to comply with court rules governing the contents of that response. The pattern of delay and disregard for court-imposed time limits that has occurred in this case displays a clear history of dilatoriness.

### 4. *Willfulness or Bad Faith*

■ Throughout this litigation, Andrews has not offered any plausible reason for his failure to comply with this Court's orders. As a practicing attorney, he knows or should know that court orders cannot simply be ignored. Yet he has repeatedly demonstrated an unwillingness to prosecute his claims on any schedule other than his own. This Court cannot help but conclude that Andrews, in bad faith, took wrongful advantage of the Court's patience.

### 5. *Alternative Sanctions*

Under the fifth Poulis factor, the Court must consider the effectiveness of sanctions less drastic than dismissal.

The Court has already assessed attorney fees against plaintiffs as a result of their failure to notify the Court and defendants that they

were unprepared to attend the Status Conference held on February 8, 1990. Even this order was not complied with by plaintiffs. It took the issuance of a second order on May 9, 1990 directing plaintiffs to pay the previously-assessed fees under threat of dismissal before plaintiff complied. If plaintiffs will not comply voluntarily with even a sanction order, the Court finds it unlikely that further monetary sanctions would deter plaintiffs' unwillingness to comply with future court orders.

Were the Court to impose the defendants' full costs on plaintiffs for all of the delays and unnecessary effort of their attorneys caused by plaintiffs, as would be fair, the amount would probably result in an effective dismissal of this case. Given the trouble it took to enforce a sanction of $2000, and the likelihood that future abuses can be expected, the Court is unwilling to test plaintiffs' inclination to pay a much greater sum.

In general, a sanction should be directed toward the particular abuse that has occurred. Here, because plaintiffs have unjustifiably delayed resolution of outstanding summary judgment and dismissal motions by failing to respond in the required manner, the natural sanction would be to deem the motions conceded, as provided by court rule, see footnote 3, supra, and as requested by defendants in separate motions. That sanction, however, would be no less harsh than to dismiss the complaint under Fed. R. Civ. P. 41(b) for failure to prosecute and comply with court rules and orders.

■ Alternatively, the Court could decide the summary judgment motion on the basis of the record as it stands. The Court acknowledges that to do so despite plaintiffs' inadequate response and lack of discovery, however, would be tantamount to a dismissal. Hence, deciding the summary judgment motions on the merits would be no less of a sanction than dismissing for want of prosecution.

6. *Meritoriousness of the Claims*

■ The standard under which this factor is determined is that of a dismissal for failure to state a claim on which relief can be granted: "A claim . . . will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff. . . ." Poulis, 747 F.2d at 869–70. Under a strict reading of this standard, most if not all of plaintiffs' claims are "meritorious." Thus, this factor does not weigh against plaintiffs.

297

### 7. *Summary of the Poulis Factors*

The Court finds that the first five factors all weigh in favor of dismissal. The sixth factor does not. Weighing most heavily against plaintiffs is the finding that Andrews personally bears substantial responsibility for most of the dilatory and recalcitrant behavior on which this decision rests. Especially compelling is the fact that not only is the *party* himself responsible, but that party—Andrews—is a practicing attorney, of whom a higher standard of conduct is expected.

Contemplating the resolution of these motions, the Court was initially inclined to decide the summary judgment motions on the merits. Based on the support tendered by defendants and the patent inadequacy of plaintiffs' opposition, the Court was disposed to grant the motions. Normally, however, when a plaintiff has done little or no discovery, courts are reluctant to grant summary judgment. Nevertheless, given plaintiffs' pattern of obstinance and delay up to this point, the Court would have been wholly justified in deciding the motions on that basis. Alternatively, the Court could have deemed the motions conceded pursuant to Local Rule 6(i) for failure to properly respond to the motions. See footnote 3, supra.

The advantage of dismissal in this case is that it more clearly explains the basis for the Court's action. If the deterrence purpose of the sanction of dismissal is to have an effect on others as well as plaintiffs in this case, courts must be willing to expressly invoke it. National Hockey League, 427 U.S. at 643, 96 S. Ct. at 2681; Curtis T. Bedwell, 843 F.2d at 696. Although the Court could appropriately dispose of this case under principles of summary judgment, to do so would obscure a substantial impetus behind the court's decision—to sanction plaintiffs for their conduct.

Arguably, if the Court were to continue to impose lesser sanctions and to threaten plaintiffs with dismissal, this case might possibly move forward. Federal District Court, however, is not a litigant daycare center. Managing a full docket is difficult enough for the Court without its having to monitor every move made by an attorney plaintiff who has already been given too many opportunities to avoid dismissal under Fed. R. Civ. P. 41(b). The Court therefore finds that the imposition of lesser sanctions would be neither just nor workable.

298

## III. CONCLUSION

■ For the preceding reasons, the Court will grant defendants' motion to dismiss for want of prosecution and violation of court orders pursuant to Fed. R. Civ. P. 41(b).

An appropriate order is attached.

### ORDER

In accordance with the Court's opinion filed herewith,

It is on this 14th day of August, 1990

ORDERED that defendants' motion to dismiss for want of prosecution and violation of court orders pursuant to Fed. R. Civ. P. 41(b) is granted; and it is further

ORDERED that plaintiffs' complaint is dismissed with prejudice.