NATIONAL CREDIT UNION ADMINISTRATION BOARD,
CONSERVATOR, Plaintiff,

v.

BERNARD GURR, JR., MINARETA THOMPSON, LAAU SEUI,
GAEA PEREFOTI FAILAUTUSI, DR. PITA LAUVAO, FRED
VASAI, TAUIVI TUINEI, and VII PITA, Defendants.

---

AMERICAN SAMOA GOVERNMENT EMPLOYEES
FEDERAL CREDIT UNION, Plaintiff,

v.

BERNARD GURR, JR., Defendant.

---

ASG EMPLOYEES FEDERAL CREDIT UNION, Plaintiff,

v.

BERNARD GURR, JR., Defendant.

---

LAISENE GURR and JOHN GURR, for Themselves and on behalf
of the Heirs of BERNARD GURR and TEUILA HALLIDAY,
Plaintiffs,

v.

THE AMERICAN SAMOA GOVERNMENT
EMPLOYEES CREDIT UNION, Defendant.

---

ASG EMPLOYEE FEDERAL CREDIT UNION, Plaintiff,

v.

BERNARD GURR, JR., Defendant.

High Court of American Samoa
Trial Division

CA No. 117-93
CA No. 06-94

89

CA No. 08-94
LT No. 13-94
CA No. 16-94

April 27, 2005

Before RICHMOND, Associate Justice; SAGAPOLUTELE, Associate Judge; MAMEA, Associate Judge; and TAPOPO, Associate Judge.

Counsel: For Plaintiff National Credit Union Administration Board, Conservator, and Plaintiff/Defendant American Samoa Gov't Employees Federal Credit Union, Marshall Ashley and Frederick O'Brien
For Plaintiffs Laisene Gurr and John Gurr, Asaua Fuimaono
For Defendants Bernard Gurr, Jr., Minareta Thompson, Laau Seui, Gaea Perefoti Failautusi, Dr. Pita Lauvao, Tauivi Tunei, and Vii Pita, Katopau T. Ainu`u

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO DISMISS FOR FAILURE TO PROSECUTE

### Introduction

In July 1991, Defendant Bernard Gurr, Jr. ("Gurr"), the former manager of Plaintiff American Samoa Government Employees Federal Credit Union ("ASGEFCU"), signed a promissory note payable to ASGEFCU, a federal credit union operating in the territory, in the principal sum of $20,261.63, with an annual interest rate accruing at 14% on the unpaid principal. Gurr secured this debt by giving ASGEFCU an interest in Gurr's 1991 Ford Taurus station wagon. In August 1992, Gurr signed a Fixed & Mortgage Note to secure a loan from ASGEFCU in the principal sum of $130,544.28, with an annual interest rate of 10% on the unpaid principal. In September 1992, Gurr signed a mortgage giving ASGEFCU a security interest in his allegedly individually owned land in Maloata village for the August 1992 loan. In May 1993, Gurr obtained an additional loan in the principal sum of $1,565.90 from ASGEFCU, with interest accruing annually at 18% on the unpaid principal.

In October 1993, the National Credit Union Administration Board ("NCUAB"), an agency of the United States Government, ordered ASGEFCU into conservatorship, with itself appointed as the conservator. That month, NCUAB filed CA No. 117-93, applying for permanent injunctive relief against Gurr and his co-defendants, members of the ASGEFCU board of directors, requesting that they be restrained from entering ASGEFCU premises and comply with the conservatorship order, which granted the NCUAB with authority to possess and control all ASGEFCU property and assets. In January 1994, a default judgment was entered granting the permanent injunctive relief against all named defendants except Gurr, who had answered and counterclaimed.

Also in January 1994, ASGEFCU filed three separate actions, DCCA No. 6-94 and CA Nos. 8-94 and 16-94, alleging that Gurr had defaulted on the three loans. ASGEFCU moved for, and we granted, consolidation of these actions. Although in his answers Gurr did not dispute that ASGEFCU has a security interest and a right to take his land, residence, or vehicle, he challenged ASGEFCU's right to prejudgment and post-judgment interest and attorney's fees related to such loans. Moreover, Gurr counterclaimed that he was unable to make his payments based on ASGEFCU's wrongful conduct in failing to issue him paychecks, and failing to accept checks in his possession as payment after he vacated his employment with ASGEFCU. ASGEFCU moved to dismiss Gurr's counterclaims, which we denied in June 1994.

In March 1994, Plaintiffs Laisene Gurr ("Laisene") and John Gurr ("John") filed LT No. 13-94 for themselves and on behalf of heirs of Bernard Gurr and Teuila Halliday (collectively "the Gurr Heirs"), applying for a permanent injunction preventing foreclosure on the land used to secure the $130,544.28 loan. The Gurr Heirs claimed that the land in question belonged to the estates of Edwin and Fanua Eleitino Gurr, which had not yet been probated, that Gurr did not have an entire interest in the land and that therefore Gurr lacked the authority to offer the land as security for the loan. We enjoined the non-judicial foreclosure of the land during the pendency of our consideration of ASGEFCU's motion to dismiss the three consolidated actions, enjoined the heirs from conveying, further encumbering, or otherwise disposing of the land at issue, and later consolidated this action and CA No. 117-93 with the other three.[1]

In September 2004, over a decade after filing its actions and our denial of the motion to dismiss, NCUAB, ASGEFCU's successor,[2] resuscitated this case by filing a motion for summary judgments on behalf of ASGEFCU with regard to CA Nos. 8-94 and 16-94, and DCCA No. 6-94, the three loan default actions. In November 2004, Paddy Walker, an heir of Edwin Gurr, moved for permission to intervene and to require joinder of all of his heirs in these consolidated actions. Also in November 2004, Gurr, joined by Laisene and John in a separate motion, moved to dismiss all consolidated actions for NCUAB and/or ASGEFCU's failure to prosecute under T.C.R.C.P. 41(b). We heard the motions for summary judgment, intervention, joinder, and dismissal on November 12, 2004. We now deny the motion for summary judgment and grant the motions to dismiss for failure to prosecute.

### Discussion

Pursuant to T.C.R.C.P. 41(b), "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him." No

---

[1] The High Court's Land and Titles Division of this Court has exclusive jurisdiction over all controversies relating to land. A.S.C.A. § 3.0208(b). Accordingly, the six consolidated actions are transferred to this division.

[2] ASGEFCU is no longer in existence, and was liquidated and taken over by NCUAB after the 1993 order of conservatorship. NCUAB acknowledges that it has not been formally substituted as a party in place of ASGEFCU in this matter, but "prosecutes the case in the Credit Union's name." Although we are concerned whether NCUAB has the authority to act on ASGEFCU's behalf absent formal substitution, we do not address the issue in our opinion, as our holding turns on facts unrelated to NCUAB's authority.

precise formula exists as to what circumstances justify granting such a motion, and courts must use their discretion to examine the procedural history of each case, remaining mindful of the public policy that favors hearing a claim upon its merits. *See Davis v. Operation Amigo, Inc.*, 378 F.2d 101 (10th Cir. 1967); *see also Kane v. Country Comfort*, 10 A.S.R.2d 16, 17 (Trial Div. 1989). Some factors to consider when entertaining such a 41(b) motion include: (1) the duration of plaintiff's failures or a history of dilatoriness; (2) whether conduct of plaintiff was willful or in bad faith; (3) whether plaintiff had received notice that further delays would result in dismissal; (4) whether defendant was likely to be prejudiced by further delay; and (5) the efficacy of lesser sanctions. *Patterson v. Newspaper and Mail Deliverers' Union of New York and Vicinity*, 884 F. Supp. 869 (S.D.N.Y. 1995); *see also Andrews v. Gov't of Virgin Islands*, 132 F.R.D. 405, (D.V.I. 1990).

In *Kane*, we found that the plaintiff's failure to amend his pleading for a period of two years, based in part on his claim that no headway could be made in the case in the absence of an effective on-island expert witness, did not warrant dismissal. 10 A.S.R.2d at 17. We concluded that although the plaintiff indeed neglected his case, when judged against the usual standard of diligence with which lawsuits in American Samoa have been prosecuted, this delay was not too prejudicial to outweigh the policy favoring adjudication on the merits, and instead we awarded the defendant fees incurred in connection with its motion to dismiss. *Id.*

■ In the current case, however, by taking into consideration the factors above, we think dismissal is appropriate. First, NCUAB has delayed pursuing this case for over a decade. ASGEFCU filed the first of its complaints in this consolidated matter in October 1993, and since June 1994, when we issued an order denying NCUAB's motion to dismiss Gurr's counterclaim, NCUAB has taken no action in this case until this year.

Second, NCUAB has maintained in its submissions and at hearing that its delay has been willful and deliberate, stating that it postponed filing its present summary judgment motion pending the outcome of a federal criminal prosecution against Gurr for offenses related to his actions as ASGEFCU's manager, but not directly related to these territorial civil actions. Gurr was convicted and, in November 2003, sentenced for his federal crimes. This explanation for NCUAB's delay for more than 10 years is not persuasive justification for its lengthy inaction. Resolution of the federal criminal prosecutions have no direct bearing on Gurr's contractual obligations to repay borrowed funds, regardless of whether NCUAB could properly foreclose on the property used to secure the loans. Moreover, although we hold NCUAB to its word that its delay has

been deliberate, we harbor doubt to its explanation, as NCUAB brings its present summary judgment motion nearly a year after Gurr's sentencing.

Turning to a third factor, though this court has not, in the past, notified NCUAB that further delays would result in dismissal of these actions, we have not, in part, had an opportunity to do so. Upon revival of this matter, we did, when the summary judgment motion first came for hearing on October 22, 2004, and when it was substantively heard on November 12, 2004, suggest that such a motion could be validly pursued. However, that NCUAB has not delayed in presently pursuing its motion after we raised the Rule 41(b) issue, leans somewhat in NCUAB's favor.

Fourth, and most importantly, Gurr has been genuinely prejudiced by NCUAB's delay. In CA No. 117-93, in which Gurr encumbered the land in Malaota for the $130,544.28 loan, NCUAB seeks $128,366.77 in overdue principal, accumulated prejudgment interest at the rate of $34.67 per day from the January 1994 filing to judgment date, contractual interest at the 10% annual rate from the date of judgment on the entire judgment amount, and the option of judicial foreclosure on the mortgaged property to account for the overdue balance. Not only has the failure to prosecute unnecessarily left open the possibility that Gurr will be subject to extremely excessive accruals in interest than had this case been litigated earlier, but in the failure to earlier resolve the issue of whether the property has been properly encumbered, the Gurr family's land has been unnecessarily clouded by impending foreclosure for over a decade, impacting the ownership status and market value of the land.

Considering the balance of these factors, we conclude that the lengthy duration of delay, its willfulness, and its prejudicial effect warrant dismissal. Although we could seek a lesser sanction than dismissal, such as a grant of award of attorney's fees in connection with the motions to dismiss, as we did in *Kane*, there comes a point at which a plaintiff must face the consequences of its dilatoriness. In *Kane*, our evaluation that a two year delay did not warrant dismissal was based on a local standard of diligence in which lawsuits are prosecuted within the territory. In the present case, however, not only has NCUAB delayed over eight years longer than the plaintiff in *Kane*, but because it has done so at the behest of inaction by an agency of the federal government taking control of the consolidated actions, we see no reason to allow NCUAB to take advantage of any more lax locality standard of diligent prosecution. Moreover, if we are not willing to dismiss an action for failure to prosecute in a case as extreme as this one, where a party has willfully delayed prosecution for over 10 years, we would be setting the standard of diligent prosecution in the territory far too low, essentially rendering the Rule 41(b) "failure to prosecute" language meaningless.

■ NCUAB does correctly observe that only "unreasonable" delay, and not the mere lapse of time alone, warrants dismissal under the rule. *See Cherry v. Brown-Frazier-Whitney*, 548 F.2d 965 (D.C. Cir. 1976) (noting that speed simply for the sake of speed is not the purpose to be served by the rule allowing dismissal for failure to prosecute). Nevertheless, we think that NCUAB's delay has been "unreasonable" because, as we described above, its delay has been deliberate without reasonable justification and prejudicial to Gurr and the Gurr family heirs beyond the mere burden of the delay itself. *See LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 210 (2d Cir. 2001); *Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1280 (9th Cir. 1980) (actual prejudice is an important factor in deciding whether a given delay is unreasonable).

## Order

We recognize that a court has a strong interest in hearing a case on its merits. But, so, too, must the court determine that under certain circumstances this policy is outweighed by the lack of reasonable justification and the risk of prejudice to defendants caused by prosecutorial delay. Having considered these competing policy considerations in light of the facts in these actions, we deny the ASGEFCU's motion for summary judgment and dismiss all of the consolidated actions for failure to prosecute. It is so ordered.