**IN RE: KELVIN MANBODH ASBESTOS LITIGATION SERIES; KELVIN MANBODH, ET AL., Plaintiffs**

**v.**

**HESS OIL VIRGIN ISLANDS CORPORATION, ET AL., Defendants.**

**HESS OIL VIRGIN ISLANDS CORPORATION, Third Party Plaintiff**

**v.**

**LOCKHEED MARTIN CORPORATION, ET AL., Third Party Defendants.**

**LITWIN CORPORATION and LITWIN PAN-AMERICAN CORPORATION, Third Party Plaintiffs**

**v.**

**UNIVERSAL OIL PRODUCTS COMPANY, ET AL., Third Party Defendants**

Asbestos Docket Master Docket No. 324/1997,
Civil No. 324/1997

Superior Court of the Virgin Islands

Division of St. Croix

November 30, 2005

268

270

BRITAIN H. BRYANT, ESQ., Bryant, Barnes, Moss, & Beckstedt LLP, Attorneys for Third-Party Plaintiff Hess Oil Virgin Islands Corp., St. Croix, VI.

WILFREDO A. GEIGEL, ESQ., Law Offices of Wilfredo Geigel, Attorney for Third-Party Defendant Rubber & Gasket Co. of Puerto Rico, Inc., St. Croix, VI.

CABRET, *Judge*

## MEMORANDUM OPINION

(November 30, 2005)

Before the Court is a Motion to Dismiss filed by Third-Party Defendant Rubber & Gasket Co. of Puerto Rico [hereinafter "R & G"]. Third-Party Plaintiff Hess Oil Virgin Islands Corporation [hereinafter "HOVIC"] opposes this Motion. Third-Party Defendants Austin Industrial, Inc. [hereinafter "Austin"] and Virgin Islands Industrial Maintenance Corporation [hereinafter "VIIMC"] joined R & G's

Motion.[1] For the following reasons, R & G's Motion to Dismiss shall be denied.

## I. BACKGROUND

To resolve pre-trial matters, the Superior Court, in May 1997, consolidated in a single docket, *In re Kelvin Manbodh Asbestos Litigation Series,* lawsuits filed on behalf of Plaintiff Kelvin Manbodh and 210 additional parties against HOVIC, Litwin Corporation [hereinafter "Litwin"], and some twenty-six other defendants. Litwin and HOVIC filed motions seeking leave to file third-party complaints in October and November 2001, respectively. These initial motions, granted shortly thereafter, sought to implead parties, including R & G, only with respect to the four cases set for trial. On May 10, 2002, R & G filed the instant Motion, seeking to dismiss HOVIC's third-party claims filed in the Superior Court, Division of St. Croix, Civil Numbers 324/97, 16/98, 44/98, and 514/98. HOVIC's third-party and cross-claims, including those against R & G, and Litwin's third-party claims, were severed from the first-party matters in October 2002.

After claims between HOVIC, Litwin and First-Party Plaintiffs were settled in January 2003, subsequent motions to amend by HOVIC and Litwin, impleading previously named and additional defendants in all remaining first-party cases, were granted in October 2004. In all, some eighty-seven additional companies, including R & G,[2] were brought into this litigation as third-party defendants.

---

[1] All of the language in this opinion equally concerns Austin and VIIMC, with the exception of the discussion of personal jurisdiction. There is no factual record on which this Court can arrive at a decision on the Court's exercise of personal jurisdiction over Austin and VIIMC. Therefore, due to Austin and VIIMC's failure to carry their burden of production, the inquiry will be reserved until there is such a record.

[2] R & G was named as a defendant in thirty-seven first-party matters. Initially, R & G's Motions to Dismiss, located in the master docket at document numbers 1491-94, concerned only four first-party proceedings, Civil Nos. 324/97, 16/98, 44/98, and 514/98. This Court will consider, however, the merits of the Motion with respect to HOVIC's Third Amended Third-Party Complaint, where R & G has been impleaded with respect to all First-Party Plaintiffs. *See generally* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1476 at 556-58 (2d ed. 1990) (providing that once amended, the prior pleading serves no function and that defendant should not be required to file a new motion to dismiss just because an amended pleading was introduced while the motion was pending). None of the motions, oppositions, or replies contain First-Party Plaintiff specific allegations and since the issues raised are primarily

## II. PRELIMINARY MATTERS

In its Motion to Dismiss, R & G makes a litany of unpersuasive arguments. This Court will consider and dispose of each in turn. First, R & G asserts that "HOVIC's action holds no relevance, does not arise out of the same transaction, occurrence, series of transactions or occurrences and is entirely separate and an independent action from the original complaint, Civil No. 514/1997."[3] R & G's argument is without legal consequence. It fails to cite a legal basis entitling it to relief or to identify what such relief may be. Presumably, this is a belated and collateral attack on this Court's grant of leave to HOVIC to file a third-party complaint, governed by the Federal Rules of Civil Procedure. *See* SUPER. CT. R. 7; FED. R. CIV. P. 14(a). R & G is "within the scope of the impeader,"[4] and such a decision was arrived at in the sound discretion of this Court. 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL §§ 1443, 1446 (2d ed. 1990) [hereinafter "WRIGHT & MILLER"]. The Court's action was proper, as HOVIC's causes of action[5] are dependent on the resolution of the primary lawsuit, Civ. No. 514/97. HOVIC's claims are related to, and arise from, the same transactions or occurrences that form the basis of the primary lawsuit. All of the purported liability of HOVIC and in turn, the potential liability of R & G to HOVIC, arises from the same

---

the same with respect to each of those plaintiffs, in the interest of judicial economy, the Court will treat R & G's Motion as though it was filed in all of HOVIC's third-party claims against R & G.

[3] (R & G's Mot. to Dismiss at 4.) This is merely an example of the language from one of R & G's parallel motions. One can deduce that R & G would make similar claims regarding all the matters in which it has been named as a third-party defendant.

[4] HOVIC need only establish that R & G is or may be liable to it, to place R & G within the scope of the impleader. *Andrew v. Carvalho*, 14 V.I. 513, 516 (Terr. Ct. 1978); *Dublin v. V.I. Telephone Corp.*, 15 V.I. 214, 230 n.15 (Terr. Ct. 1978). In accordance with proper third-party impleading procedure, the benefit would presumably inure to HOVIC, not First-Party Plaintiffs, since it has already settled claims with the Plaintiffs. *See Dublin*, 15 V.I. at 230.

[5] Counts I-V of HOVIC's original Third-Party Complaint include causes of action for common law contribution, common law indemnification, contractual indemnification, breach of contract: failure to insure and breach of contract: failure to name as additional insured. Count VI, added in a later amendment of the pleading, does not name R & G as a defendant and will not be considered.

occurrences as the primary lawsuit, the injuries to the First-Party Plaintiffs from exposure to toxic substances.[6]

Second, R & G contends that HOVIC's Complaint is redundant and general by its failure to allege facts, time periods, precise causes of action and the existence of a causal relationship.[7] Again, it is unclear what legal premise this concerns and what relief is sought. The Court notes that the vague or ambiguous nature of a pleading may be the basis for granting either a motion to dismiss or a motion for more definite statement under the Federal Rules of Civil Procedure. 5C WRIGHT & MILLER, *supra* § 1376 at 309 (3d ed. 2004). To the extent that R & G alleges these deficiencies in support of a motion to dismiss under Rule 12(b)(6), the Court temporarily reserves judgment for a discussion later in this opinion. If, however, this argument was intended as a motion for more definite statement,[8] then such a motion will be denied, for the same reasons explained in this Court's Order of January 18, 2005. That Order provided that such specific information, where not already contained in the pleading, may be obtained through discovery. The Court's decision relied primarily on considerations of judicial economy and the determination that the efforts expended refining the pleading further would be better spent facilitating the discovery process to achieve a more expedient resolution of this matter. 5C WRIGHT & MILLER, *supra* § 1376 at 310.

Third, R & G challenges HOVIC's attempts to "tak[e] undue and unfair advantage" of it through HOVIC's comparatively longer involvement in the proceedings and failure to distinguish R & G's negligence from the acts or omissions of co-defendants.[9] This, R & G alleges, violates R & G's "rights to due process and equal protection."[10] The United States Constitution, the basis for these rights, is made applicable to the Virgin Islands through the Revised Organic Act of 1954, at 48 U.S.C. § 1561.[11] The violation of such rights, however, does

---

[6] (HOVIC Third Am. Third-Party Compl. at 13 ¶¶ 6-9, 18 ¶ 3.)

[7] (R & G's Mot. to Dismiss at 4.)

[8] In R & G's Reply to HOVIC's opposition to another motion, R & G suggests that the instant motion to dismiss was a motion, at least in part, for a more definite statement. (R & G's Reply to HOVIC's Opp'n to Mot. to Make Court's Dec. 19, 2002 Ruling Extensive to R & G at 5.)

[9] (R & G's Mot. to Dismiss at 4.)

[10] *Id.* at 5.

[11] The Code provides:

274

not trigger any level of Constitutional scrutiny unless a territory or territory-sponsored actor is involved. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982); *Williams v. Yellow Cab Co. of Pittsburgh, Pa.*, 200 F.2d 302, 307 (3d Cir. 1953). HOVIC does not fall within either category of actor. Thus, the Court need not consider the merits of either R & G's due process or equal protection claims.

R & G's unfair advantage theory also may be read to modify its subsequent allegation, that HOVIC purportedly violated the Case Management Order. A failure to comply with a court order may lead to an involuntary dismissal by a court under Federal Rule 41(b) of the Federal Rules of Civil Procedure. R & G claims that by filing a third-party complaint within the twelve-month window prior to a scheduled trial date, HOVIC violated the Case Management Order and thus, took unfair advantage of R & G. Currently, no matters are scheduled for trial.[12] To the extent that this argument seeks to revisit the Court's decision to grant HOVIC's motion for filing and service of the Third-Party Complaint, despite the motion's untimeliness,[13] the dilatory conduct analysis contained in the Order denying Alltite's Motion to Dismiss[14] continues to provide adequate grounds for a denial of R & G's requested relief.

That Order, like this allegation, concerned HOVIC's dilatory conduct in filing and serving its Complaint. As the Court noted therein, the "decision to invoke [a Rule 41(b)] sanction is discretionary," and that such a drastic measure should be reserved for egregious fact patterns. *Andrews v. Gov't of the Virgin Islands*, 132 F.R.D. 405, 25 V.I. 284, 293 (D.C.V.I. 1990) (citing *Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir. 1984) and *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 867-68 (3d Cir. 1984)). The Court in *Andrews* applied the six-factor

---

No law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law or deny to any person therein equal protection of the laws.

48 U.S.C. § 1561.

[12] The cases previously mentioned in footnote 2 were settled. No further matters have been set for trial.

[13] HOVIC filed its Third-Party Complaint on November 30, 2001, a mere twenty-six days less than a year before the scheduled trial date of November 4, 2002. R & G no longer faces an abbreviated window for discovery in advance of trial.

[14] That document is located at master docket entry number 2070.

*Poulis* test to determine that a dismissal under Rule 41(b) was warranted. *Andrews*, 25 V.I. at 294; FED. R. CIV. P. 41(b). This Court need not go so far, as, at this time, there is little prejudice to R & G stemming from the minimal delay in filing and service that occurred in November 2001 and early 2002, respectively.

Consequently, none of the grounds for relief asserted by R G and addressed thus far, are compelling. R & G's final two bases for relief, however, evoke more traditional notions for dismissal, namely, a lack of personal jurisdiction and a failure to state a claim upon which relief can be granted.[15] *See* SUPER. CT. R. 7; FED. R. CIV. P. 12(b)(2), (6). These grounds merit a more in depth discussion.

## III. PERSONAL JURISDICTION

As a non-resident corporation, R & G may be subject to *in personam* jurisdiction based on common law grounds or by the application of statutory provisions governing personal jurisdiction. Under the common law, personal jurisdiction may be asserted where the defendant consents, is deemed to have consented,[16] or is physically present in a jurisdiction. *See Zelson v. Thomforde*, 412 F.2d 56, 58-59 (3d Cir. 1969); *Tuky Air Transp. v. Edinburgh Ins. Co., Ltd*, 544 F. Supp. 841, 19 V.I. 232, 245 (D.V.I. 1982). Personal jurisdiction may also exist where there is an enduring relationship, commonly referred to as general personal jurisdiction, such that defendant's contacts with the forum are so continuous and systematic that the defendant can be held to be present

---

[15] (R & G's Mot. to Dismiss at 5-6.)

[16] Although not specifically raised by the parties, personal jurisdiction may be proper based on common law grounds. The constructive consent doctrine provides that where a party seeks relief from the courts, that party may be held to have consented, thus, involuntarily waiving or forfeiting any jurisdictional defenses to suit. *See Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-05, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) (finding that a defendant who sought dismissal waived his defense to jurisdiction by failing to comply with discovery orders aimed at determining whether jurisdiction was proper after it submitted to jurisdiction for the limited purpose of such a determination); *Adam v. Saenger*, 303 U.S. 59, 67-68, 58 S. Ct. 454, 82 L. Ed. 649 (1938) (positing that when a party has brought suit in a jurisdiction where it otherwise would not be subject to personal jurisdiction as a defendant, there is jurisdiction over the counterclaim against the party bringing suit). With R & G, this purported consent to suit on all counts may have occurred through its actions in the first-party and third-party proceedings. Nevertheless, the Court will refrain considering the merits of such a basis because it asserts jurisdiction under the long-arm statute.

for all purposes. V.I. CODE ANN. tit. 5, § 4902 (1997);[17] *see generally Paradise Motors, Inc. v. Toyota de Puerto Rico Corp.*, 314 F. Supp. 2d 495, 499 (D.V.I. 2004). Finally, specific personal jurisdiction may be asserted through the long-arm statute under any of the eight grounds enumerated in the statute. V.I. CODE ANN. tit. 5, § 4903 (1997).[18]

 In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court shall accept all of a nonmovant's factual allegations as true and construe all disputed jurisdictional facts in the nonmovant's favor. *Paradise Motors, Inc.*, 314 F. Supp. 2d at 497 (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 143 n. 1 (3d Cir. 1992)); *see also Harthman v. Texaco (In re Tutu Wells Contamination Litig.)*, 846 F. Supp. 1243, 1264 (D.V.I. 1993). Where no evidentiary hearing has been held, the plaintiff need only make a *prima facie* showing of personal jurisdiction based on affidavits and other supporting materials[19] to withstand a challenge to jurisdiction. *Carteret Sav. Bank, FA,*, 954 F.2d at 143 n. 1 (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *In re Tutu Wells*

---

[17] The statute contains the following language:

A court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, this territory as to any claim for relief.

V.I. CODE ANN. tit. 5, § 4902.

[18] The statute provides, in relevant part:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(1) transacting any business in this territory;

(2) contracting to supply services or things in this territory;

(3) causing tortious injury by an act or omission in this territory;

(4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory; ...

(6) contracting to insure any person, property, or risk located within this territory at the time of contracting; ...

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

V.I. CODE ANN. tit. 5, § 4903.

[19] The Court may consider matters outside the pleadings without transforming the Rule 12(b)(2) motion to dismiss into a Rule 56 motion for summary judgment. 5C WRIGHT & MILLER, *supra* § 1364 at 127.

*Contamination Litig.*, 29 V.I. at 73, 846 F. Supp. at 1264. Eventually, however, plaintiff will bear the burden of establishing by the preponderance of the evidence that personal jurisdiction is proper at a pre-trial hearing or at trial. *Marine Midland Bank, N.A.*, 664 F.2d at 904.

HOVIC claims that there is personal jurisdiction over the parties pursuant to the Virgin Island Code. Yet, HOVIC abandons any claims for general personal jurisdiction under section 4902 of title 5 of the Virgin Islands Code, by failing to rely on it in its opposition to R & G's Motion to Dismiss.[20] Therefore, each count must be treated individually with respect to the exercise of personal jurisdiction under either a common law and/or long-arm basis. *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001); *Ainbinder v. Potter*, 282 F. Supp. 2d 180, 184-87 (S.D.N.Y. 2003) (finding that defendant consented to personal jurisdiction as to Count I, but not as to part of Count II or Count III). A claim-specific inquiry is necessary because the requisite quantum of contacts may differ between tort and contract causes of action. *Remick*, 238 F.3d at 255-56; *Gehling v. St. George's Sch. of Medicine, Ltd.*, 773 F.2d 539, 542-545 (3d Cir. 1985) (finding that personal jurisdiction existed for the plaintiffs' intentional tort claims, but not for their negligence or breach of contract claims).

## A. Grounds for Specific Personal Jurisdiction

 Specific personal jurisdiction, jurisdiction based on the defendant's forum-related activities, may exist over R & G through the application of the Virgin Islands' long-arm statute found in section 4903 of title 5.[21] The grounds contained therein represent the exclusive bases for the exercise of specific jurisdiction over a non-resident defendant. 5 V.I.C. § 4903(b). Courts have interpreted the long-arm statute as being co-extensive with outer limits permitted by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Godfrey v. International Moving Consultants, Inc.*, 18 V.I. 60, 66 (D.V.I. 1980) (citations omitted). Constitutional limits require that a defendant purposefully avail itself of the privileges of conducting activities within the forum territory through invoking the benefits and protections of the

---

[20] Because the Court cannot conceive that the exercise of general personal jurisdiction would be proper on this record and HOVIC apparently has abandoned this ground, it need not consider it.

[21] See footnote 18 for the text of the statute.

forum territory's laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). Activities intentionally directed at the forum territory, will be sufficient "minimum contacts" provided that they do "not offend the traditional notions of fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Therefore, in applying the Virgin Islands' long-arm statute, the Court's *in personam* jurisdiction is limited first by the terms of the statute and then by the Due Process Clause of the Fourteenth Amendment to the Constitution. *See Carson v. Skandia Ins. Co.*, 19 V.I. 138, 149 (D.V.I. 1982).

## 1. Count I: Personal Jurisdiction Under the Long-Arm Statute

■ Although HOVIC chiefly relies on section 4903(a)(4) of title 5 of the Virgin Islands Code[22] for its assertion that jurisdiction is proper, a *prima facie* showing of personal jurisdiction may alternatively be made on the "transacting business" and "contracting to supply services or things" statutory bases, as long as the activities giving rise to the exercise of jurisdiction were conducted during the time periods in question.[23] *See*

---

[22] (HOVIC's Resp. in Opp'n to R & G's Mot. to Dismiss Third Party Compl. at 7-9.)

[23] R & G implicitly suggests that the present tense of the long-arm statute precludes the exercise of jurisdiction where the defendant is not currently conducting the forum-related activities listed therein. (R & G's Mot. to Dismiss at 6.) The Court does not read this statute so restrictively. It is enough that a non-resident defendant performed the activities during the time period that gives rise to this suit, even if in the past. For example, if the defendant previously transacted business in the territory and those business contacts are the grounds for the lawsuit, then personal jurisdiction may be properly exercised notwithstanding the cessation of transacting business. *See e.g., Anthem Ins. Companies, Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1238 n. 13 (Ind. 2000) (interpreting a similarly-worded Indiana trial procedure rule and concluding that a "nonresident defendant should not be allowed to escape personal jurisdiction by ending their [sic] contact with the forum state after they [sic] commit a wrong"). The reading may be even more expansive for purported tort liability. Section 4903(a)(4) of title 5 of the Virgin Islands Code contemplates unrelated plus-factor contacts (i.e. the defendant's reasonable connection with the jurisdiction) in conjunction with the commission of a tort outside the jurisdiction causing injury within. *See Hendrickson v. Reg. O Co.*, 657 F.2d 9, 13-14 (3d Cir. 1981) (relying on the comment of Uniform Interstate and International Procedure Act to suggest that some quantum of unrelated contacts, such as doing/soliciting business, persistent course of conduct, and/or the deriving of substantial revenue might suffice for the exercise of jurisdiction). Under this provision, the plus factor, i.e. the additional contacts, need not be continuing in nature. *See Anthem Ins. Companies, Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d at 1238. *But see In re Tutu Wells Contamination Litig.*, 29

5 V.I.C. § 4903(a); *see also,* 4 WRIGHT & MILLER *supra,* § 1067.6 at 563-64 (3d ed. 2002) (suggesting that a party need not plead a statutory basis for jurisdiction); *D'Addario v. Geller,* 264 F. Supp. 2d 367, 389-90 n. 29 (E.D. Va. 2003) (finding that a Court may exercise jurisdiction on a ground *sua sponte* despite a party's failure to even argue that basis).

Turning to Count I, common law contribution, this Court must first consider the factual predicate of such a claim. A cause of action for common law contribution generally may lie where two or more persons become liable in tort for the same injury to person or property, even though judgment has not been recovered against all or any of them. *See Gomes v. Brodhurst,* 394 F.2d 465, 466-68, 6 V.I. 163 (3d Cir. 1968) (recognizing a right to contribution in the Virgin Islands); *Beloit Power Sys. v. Hess Oil V.I. Corp.,* 18 V.I. 317, 324 (D.V.I. 1981) (acknowledging that a party may be liable in contribution even if he is not a co-defendant); V.I. CODE ANN. tit. 5, § 1451(d) (1997). The factual predicate for contribution is the existence of tort liability in Plaintiffs' assorted negligence and strict liability claims.[24] It is in this vein that the Court considers the exercise of jurisdiction.

Here, the long-arm statute may establish jurisdiction over R & G for HOVIC's contribution claim, if, as a foreign corporation, R & G can be shown to have committed a tort outside the Virgin Islands causing a tortious injury in the Virgin Islands, while conducting additional unrelated activities within the forum. 5 V.I.C. 4903(a)(4). The tort of failure to warn, in negligence and strict liability contexts, like other torts associated with defective products named in the factual allegations in Plaintiff's Complaint, presumably occurred in the jurisdiction where the product was manufactured. According to R & G, this was outside the Virgin Islands.[25] The tortious injury—the purported asbestos-related injuries to workers at the HOVIC refinery in St. Croix caused by exposure to R & G's products—was suffered, if at all, in the Virgin

V.I. at 77 (suggesting that these need to be continuing in nature). Of course, any exercise of jurisdiction based on past conduct would still depend on other aspects the personal jurisdiction analysis.

[24] (Pls. Compl. at 9-12.)

[25] Neither party argues that the tort occurred in the Virgin Islands. Although R & G should have supplied affidavits or other exhibits to support its contention that it never had contact with the Virgin Islands, for the purposes of considering where the tort may have occurred this Court will draw the inference that the tort, if it was committed at all, took place where the product was manufactured. (*See* R & G's Reply to Opp'n at 7.).

Islands. Even if a tort was committed outside the territory and a tortious injury was suffered inside the territory, HOVIC must still establish the existence of additional unrelated forum contacts, a plus factor, prior to the Court's exercise of jurisdiction over Count I. This plus factor will be satisfied if HOVIC demonstrates that R & G "[1] regularly does or solicits business, or [2] engages in any other persistent course of conduct, or [3] derives substantial revenue from goods used or consumed or services rendered, in this territory." 5 V.I.C. § 4903(a)(4) (numbers added). A court may consider each of these factors individually, or all three cumulatively, for the purposes of satisfying this step of the analysis. *Hendrickson v. Reg O Company*, 17 V.I. 457, 463 (D.V.I. 1980) *aff'd*, 657 F.2d 9, 12 (3d Cir. 1981). The conduct establishing the plus factor does not need to have any relationship with the tortious activity. *Hendrickson*, 657 F.3d at 12.

Despite claims to the contrary, HOVIC does not need to demonstrate that R & G was physically present or directly solicited business in the Virgin Islands to satisfy its requisite showing. In its Motion, R & G implies that HOVIC would need to demonstrate that R & G performed such activities as a part of HOVIC's *prima facie* showing. These are not the sole means of illustrating the propriety of this Court's exercise of personal jurisdiction over R & G. The purchase orders[26] on their own support HOVIC's allegation that from 1977 to 1984, R & G supplied assorted asbestos-containing products to the HOVIC refinery. This implicates the "doing business," "substantial revenue," and "persistent course of conduct" plus factors, in light of the inherent presumption taken in favor of plaintiffs for the resolution of all reasonable inferences.[27] *Carteret*, 954 F.2d at 143 n.1; *Hendrickson*, 657 F.2d at 11-12 (substantiality does not depend on a ratio test comparing total corporate sales to the local sales but instead turns on objective factors such as whether the sales were isolated occurrences or of a more regular

---

[26] These orders were attached to HOVIC's opposition. According to its allegations, HOVIC sent purchase orders as prerequisite to the "shipment or transfer of purchased goods to the HOVIC refinery." (HOVIC Third Am. Third-Party Compl. at 25 ¶ 7.)

[27] Annual R & G sales of asbestos containing products to HOVIC varied during these years, never exceeding $2,000.00. (HOVIC's Resp. in Opp'n to R & G's Mot. to Dismiss Third Party Compl. Ex. A.) Annual revenues of $1,800 during the same time period R & G supplied products to HOVIC were considered substantial by the Third Circuit Court of Appeals. *See Hendrickson*, 67 F.3d at 13.

nature). It is noteworthy that R & G failed to provide any exhibits or affidavits to support its position in the instant Motion as it relates to the Court's assertion of personal jurisdiction. The mere allegations in R & G's memoranda are insufficient to serve as evidence to rebut the information and conclusions that may be drawn from the purchase orders. These purchase orders contain the following relevant information, with some variation as to form: (1) they provide the party requesting the products; (2) they name the vendors of the particular product; (3) they describe the specifications of the requested products, including quantity ordered, per unit price, type, thickness, width, and length; (4) they list the respective date required, the estimated date of delivery, the estimated date of arrival on St. Croix and sometimes, the actual date of receipt, if in installments, or different from those previously listed; and (5) they memorialize the method of shipment.[28]

Specifically, the purchase orders in Exhibit A of HOVIC's Opposition relate to products purchased by "Hess Oil Virgin Islands Corporation" in St. Croix, U.S. Virgin Islands from a vendor, listed as "Rubber & Gasket Co of PR." *Id.* These also provide that the products, varying in type, thickness, width and length, all contained asbestos. Next, the documents contain a list of dates from the stipulated required date, to the date of delivery,[29] to even, the estimated date of arrival on St. Croix. Often, a handwritten notation would signify when the transaction was completed. Finally, the orders specify the method of delivery, which was generally "F.O.B. San Juan" but at other times, was "Air Freight—Prinair." All of this information, in light of the Defendant's failure to provide evidence to the contrary through affidavit or exhibit, leads the Court to conclude that jurisdiction over R & G in Count I is proper under section 4903(a)(4) of title 5 of the Virgin Islands Code.

■ Alternatively, these purchase orders provide grounds for asserting personal jurisdiction because R & G transacted business and/or contracted to supply goods in the territory when it sold assorted asbestos products to HOVIC in St. Croix. *See* 5 V.I.C § 4903(a)(1), (a)(2); *Buccaneer Hotel Corp. v. Reliance Int'l Sales Corp.*, 17 V.I. 249, 253-58; *Godfrey*, 18 V.I. at 66-68 (finding jurisdiction under both

---

[28] (HOVIC's Resp. in Opp'n to R & G's Mot. to Dismiss Third Party Compl. Ex. A.)

[29] The date of delivery is important because it represents the time and often, place, when and where the risk of loss and cost of shipping are shifted from the seller to the buyer. V.I. CODE ANN. tit. 11A, § 2-401(2)

§ 4903(a)(1) & (2) and noting that even a single act can amount to transaction of business in the territory). In *Buccaneer Hotel Corp.,* the plaintiff, a Virgin Islands resident, purchased paint by mail order from defendant, a Florida business, who shipped the order to the plaintiff in the Virgin Islands, F.O.B. New York. *Buccaneer Hotel Corp.,* 17 V.I. at 253-58. The *Buccaneer* court asserted jurisdiction under section 4903(a)(2), noting that, in light of *Hendrickson* and *Godfrey,* jurisdiction may also have existed under § 4903(a)(1). *Id.* at 257-58 (referring to *Hendrickson,* 17 V.I. at 462-63; *Godfrey,* 18 V.I. at 67-68). Here, the business conducted—the series of sales of products containing asbestos such as packing, gaskets, and pipe flanges, to HOVIC in St. Croix between 1977 and 1984—by HOVIC's allegations, led to the purported tort liability, asbestos-related injuries to employees of the refinery. This purported liability materialized into claims settled by HOVIC, eventually giving rise to its contribution claims.[30] It is not necessary, as R & G implies, that R & G would have had to physically come to the Virgin Islands or advertise here, to transact business under the long-arm statute.[31] In fact, transacting business is a term that connotes activity that is less than doing business, but more than an inconsequential act. *Hommel v. Scott,* 35 V.I. 32, 35-36 (Terr. Ct. 1996). The activities referred to by R & G, though probative for the exercise of jurisdiction, are not required.

Finally, the contracting for the sale of said products also had its situs in St. Croix. In the comments to the Uniform Interstate and International Procedure Act, the origin of the Virgin Islands personal jurisdiction statutes, the drafters contend that there may be personal jurisdiction over the parties to a contract entered into in a given forum territory. 5 V.I.C. § 4901 History cmt.; UNIF. INTERSTATE AND INTERNATIONAL PROCEDURE ACT § 1.03(a)(2) cmt. (1962) (withdrawn 1977).[32] In the Virgin Islands, if a cause of action arises out of the

---

[30]　(*See* HOVIC's Resp. in Opp'n to R & G's Mot. to Dismiss Third Party Compl. Ex. A.; HOVIC Third Am. Third-Party Compl. at 13).

[31]　(R & G's Reply to Opp'n at 5-6.)

[32]　The comment, promulgated in tandem with the Uniform Interstate and International Procedure Act, is instructive of the intent of the drafters. It is noteworthy that the National Conference of Commissioners on Uniform State Law ceased recommending this Act for adoption in 1977. This is a rather antiquated personal jurisdiction statute. At the time of this opinion, only Delaware still uses some version of this Uniform Act. *See generally Reach & Assocs., P.C. v. Dencer,* 269 F. Supp. 2d 497 (D. Del. 2003).

contract and the contract was performed in whole or part in the territory, then a court may assert personal jurisdiction over the defendant based on the contract. *Buccaneer Hotel Corp.*, 17 V.I. at 255 (citing *Godfrey*, 18 V.I. at 68). The purchase orders originated from the HOVIC refinery in St. Croix, identified by its letterhead, and the sales were consummated when the orders arrived, denoted by the handwritten records. Both these of signify some measure of performance in the Virgin Islands that may be sufficient to serve as a basis for personal jurisdiction. Consequently, while there may be evidence to support the assertion of personal jurisdiction on alternate grounds, the Court need not conclusively so hold given the determination above. Having previously established that jurisdiction over HOVIC's contribution claim is within the long-arm statute under section 4903(a)(4), the Court now turns to the Constitutional Due Process considerations.

## 2. Count I: Personal Jurisdiction Through the Purposeful Availment

▮ Due Process requires that, as a prerequisite for the exercise of personal jurisdiction, the defendant must purposefully establish minimum contacts with the forum. *Asahi Metal Indus. Co. v. Superior Ct. of California*, 480 U.S. 102, 108, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (citations omitted). While a plaintiff's unilateral act of "bringing the defendant's product into the forum [territory]," alone, may not satisfy purposeful availment, a defendant's act in "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [territory]," may be sufficient. *Id.* (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 295-96, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). The difference between these two scenarios is that the defendant is charged with the knowledge and intent of purposeful contacts under the stream of commerce theory due to the foreseeability that the product would arrive in the territory. That knowledge is important because a defendant who knowingly is subject to personal jurisdiction may "alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the [territory]." *World-Wide Volkswagen*, 444 U.S. at 297. The Constitutional test for purposeful availment, although separate, should consider facts similar to those required under the inquiry for the Virgin Islands long-arm statute.

*C & C/Manhattan v. Sunex Int'l, Inc.*, 42 V.I. 3, 10 (Terr. Ct. 1999) (citations omitted).

Taken collectively, the purchase orders indicate that R & G purposefully availed itself of the benefits and protections of the laws of the Virgin Islands. *See Hanson*, 357 U.S. at 253. A lengthy supply chain is not required to connect R & G to the Virgin Islands; it dealt directly with HOVIC. R & G had constructive, if not actual, knowledge that it was supplying goods to be used in the Virgin Islands through the name of the entity it sold products to, HOVIC, and by the identification of the ultimate destination in the purchase orders, the estimated date of delivery in St. Croix. This conclusion is further supported by the significant number of purchase orders attached as exhibits, more than an inch thick, suggesting that R & G's sale of goods to HOVIC was not an isolated occurrence, but rather, a regular course of dealing over seven years. It is this course of dealing which makes the possibility of defending suit in the Virgin Islands foreseeable. Ascribing knowledge to R & G concerning the destination of their goods and their eventual installation on the premises of the refinery are also reasonable inferences that may be taken from these facts. Counsel for R & G concedes as much when he admits that R & G conducted both "incidental sales of its products in Puerto Rico" and "activities in St. Croix in the 1970's."[33] A continuation of these sales and activities in light of the knowledge of their ultimate destination in the Virgin Islands suggests that R & G purposefully availed itself of the benefits of doing business in the Virgin Islands and may be subject to suit.

Furthermore, the connection between R & G and HOVIC was a direct one—a vendor-vendee relationship without any intermediaries. Although not raised by R & G, the existence of "ISL. FRT. TRANS. F.O.B. SAN JUAN"[34] in the purchase orders may have acted to confine these transactions to the Commonwealth of Puerto Rico. Perhaps, this was the thrust of R & G counsel's comment referencing incidental sales in Puerto Rico. Courts in this jurisdiction, however, have already determined that the "F.O.B." designation outside the Virgin Islands, while it may operate to shift the cost of shipping and risk of loss of inventory between a seller

---

[33] (R & G's Mot. to Dismiss at 13; R & G's Reply to Opp'n at 7.)

[34] The shorthand shipping designation may be reasonably interpreted to mean, "island freight transportation free on board San Juan."

and buyer, does not preclude a finding of purposeful availment. *Buccaneer Hotel Corp.*, 17 V.I. at 255-56. The *Buccaneer Hotel Corp.* Court found, on similar facts, that where a defendant (1) made arrangements for the shipment to a designated location, (2) was fully aware that the ultimate destination of the goods was the Virgin Islands and (3) knew the product was being shipped directly to the plaintiff without passing through an intervening dealer, it was amenable to personal jurisdiction notwithstanding the shipping terms' limitations. *Id.* While the depth of R & G's involvement in the shipment of the goods is unknown, at this stage, it is reasonable to conclude R & G made some minimal arrangements, and, in light of the previous discussion, that the *Buccaneer Hotel Corp.*'s test would be satisfied.

The rationale concerning the discussion of the Free On Board designation is not limited to that particular shipping term. Where the method of delivery was "Air Freight—Prinair" without an F.O.B. designation, the purported delivery obligation continued only until the seller (R & G) completed its performance by physical delivery to the carrier. *See* V.I. CODE ANN. tit. 11A, §§ 2-401(2),[35] 2-503 cmt. 5 (2003) (recognizing that the U.C.C. default rule prescribes the treatment of an unspecified contract as a shipping contract, where delivery to a carrier will end a seller's delivery obligation). Unless otherwise specified, R & G's performance would have been completed with the delivery of the goods to Prinair. The ultimate result, however, would not differ markedly from the Court's conclusion in *Buccaneer Hotel Corp.* For the same policy reasons enunciated therein, a seller who satisfied the three-part test announced in the *Buccaneer Hotel Corp.* decision and whose obligation ends with the delivery to a carrier, should be held to be subject to personal jurisdiction. *See Buccaneer Hotel Corp.*, 17 V.I. at 255-56.

---

[35] . The statute provides, in relevant part,

Each provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this article and matters concerning title become material the following rules apply: ...

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods ...

V.I. CODE ANN. tit. 11A, § 2-401(2).

The varied shipping terms do not operate to shield R & G from this Court's exercise of personal jurisdiction because purposeful availment remains. Instead, these terms provide additional evidence of R & G's connection to the forum through their implication of knowledge. Companies, such as R & G, that routinely direct products to the Virgin Islands, whether by air or by sea, purposefully avail themselves of the privileges and protections of Virgin Islands.

### 3. Count I: Constitutional Due Process Requiring Fair Play and Substantial Justice

 Even if a defendant has purposefully availed itself of the benefits and protections of a given territory, the exercise of personal jurisdiction will not be consistent with the limits imposed by the Due Process Clause if it offends the "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co.*, 480 U.S. at 113 (citations and internal quotations omitted). These requirements are applicable to the United States Virgin Islands through 48 U.S.C. § 1561.[36] In order to determine whether due process requirements are met, several factors are balanced, including "the interest of the forum in resolving the dispute, the interest of the plaintiff in obtaining relief at the particular forum, the pertinent contacts of the defendants with the forum, and the burden on the defendant in having to come to the forum to defend." *Carson*, 19 V.I. at 147. The United States Supreme Court also mandates the consideration of the "interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several states in furthering fundamental social policies." *World-Wide Volkswagen Corp.*, 444 U.S. at 292. Applying these factors to this case weighs in favor of this Court exercising jurisdiction.

 HOVIC is a corporation with its principal place of business in St. Croix and duly organized and existing under the laws of the United States Virgin Islands.[37] The alleged injuries sustained by workers at the HOVIC refinery, the factual predicate and logical dependence for HOVIC's common law contribution claim, occurred in the Virgin Islands. Forcing HOVIC to bring suit in the jurisdictions where each of the more than fifty third-party defendants have a principal place of

---

[36] See note 11 for the language of this provision.
[37] (HOVIC Third Am. Third-Party Compl. at 4 ¶ 3.)

business would splinter these causes of action, leaving them vulnerable to inconsistent verdicts regarding the corresponding liability of third-party defendants. This is especially true given the complexities and idiosyncrasies of applying Virgin Islands law, the presumptive choice of law in this matter. *See e.g., Gomes*, 394 F.2d at 466-68; V.I. CODE ANN. tit. 1, § 4 (1995). Consequently, it would be unfair and inefficient to require HOVIC to sue in a mainland or Puerto Rican court for contribution claims arising out of injuries that may have been sustained as a result of a business transaction with a nonresident defendant that occurred, at least in part, in the territory.

In particular, because the Virgin Islands are small islands with little local agriculture or manufacturing, many items are either "shipped or flown in." *Godfrey*, 18 V.I. at 69. A party must specifically arrange for items to arrive within this jurisdiction. Since many of the First-Party Plaintiffs injured as a result of alleged exposure to toxic substances were residents of the Virgin Islands, the Virgin Islands has an interest in providing an effective means of redress for these residents and to resolve the claims which flow from them. *See Id.* at 69-70. That interest remains strong with respect to HOVIC, a resident of the Virgin Islands and the premises owner where many of the First-Party Plaintiffs allegedly suffered their injuries.

Furthermore, the most convenient place for HOVIC to litigate this claim is in the Superior Court. The Superior Court has been the repository for most of the evidence submitted and testimony taken in the 211 first-party matters already docketed. When contribution claims arise out of those first-party matters, this Court offers better prospects for a swift resolution than the alternative, re-litigating in a separate jurisdiction. Similarly, exercising personal jurisdiction over HOVIC's contribution claim is also consistent with the policy of several states, providing for the potential shifting of liability and responsibility to the parties with the greatest ability to mitigate future harm, the manufacturers of defective products.

Finally, R & G will not be subjected to an undue burden as a result of having to litigate its claim in the Superior Court, especially in light of its contacts with the forum, discussed previously. R & G, on several occasions, emphasizes, as a part of its alleged undue burden, the vast temporal disparity between the sale of goods to HOVIC and the commencement of this litigation, for the proposition that it was not

foreseeable for them to be haled into court.[38] The Court disagrees. Asbestos-related illnesses are well understood to have long gestation periods. Such a disparity in time was not only foreseeable by a manufacturer of asbestos products, but R & G should have fully anticipated such a suit and have arrived armed with more persuasive arguments in support of its challenge to personal jurisdiction. While it may be inconvenient for R & G as a Puerto Rican corporation, to defend its claim here, such an inconvenience does not amount to a due process violation. This is even more evident in light of the Court's determination that R & G availed itself of business opportunities in the Virgin Islands. Therefore, the exercise of personal jurisdiction over Defendant R & G with respect to Count I is in accord with due process and would not violate its constitutional rights.

### 4. Counts II-V: Specific Personal Jurisdiction

Personal jurisdiction also exists over R & G for HOVIC's claim of common law indemnification. Stemming from the same factual predicate, and pled in the alternative to its common law contribution claim, HOVIC's common law indemnification claim arises from HOVIC's purported passive liability for the exposure of the First-Party Plaintiffs to toxic substances.[39] For the same reasons stated above with regards to Count I, taking all factual allegations as true, this Court finds that personal jurisdiction over R & G as to Count II is proper under the Virgin Islands long-arm statute and is constitutionally permissible.

Similarly, personal jurisdiction over R & G exists regarding HOVIC's contractual indemnification and breach of contract claims, Counts III, IV and V, which stem from the indemnification language contained in purchase orders allegedly sent to R & G.[40] A cause of action for contractual indemnification is similar to its common law incarnation, except the former is limited to staying within the realm of rights predefined by a contract. *Novak v. BASF Corp.*, 869 F. Supp. 113, 118-19 (N.D.N.Y. 1994). That is, contractual indemnification must arise from an appraisal of contract rights while common law indemnification need not.

---

[38] The Court directs parties to the following citations for this alleged heavy burden. (R & G's Mot. to Dismiss at 13; R & G's Reply to Opp'n at 7.)

[39] (HOVIC Third Am. Third-Party Compl. at 17-18 ¶¶ 1-3.)

[40] (HOVIC Third Am. Third-Party Compl. at 21-37.)

■ A cause of action for breach of contract exists where there is an enforceable contractual duty to perform, a full performance by the non-breaching party, a failure to perform without legal excuse by the breaching party, and damage that flows from that breach. RESTATEMENT (SECOND) OF CONTRACTS § 235 (1981); *Stallworth Timber Co. v. Triad Building Supply*, 968 F. Supp. 279, 282, 37 V.I. 49 (D.V.I. App. Div. 1997) (applying this section of the Restatement); *see also* 7A AM. JUR. PLEADING AND PRACTICE FORMS *Contracts* § 68 at 38 (1995). All three causes of action concern HOVIC's purported liability to First-Party Plaintiffs for exposure to toxic substances at the HOVIC refinery, because, without that liability, there would be no damages recoverable under contract law. Consequently, HOVIC's alleged contractual protections could provide recovery against R & G based on its alleged obligation to indemnify, insure and name HOVIC as an additional insured.

■ For contractual causes of action, personal jurisdiction over R & G may be asserted under the long-arm statute, section 4903(a)(3) of title 5 of the Virgin Island Code, and is consistent with the limits imposed by the United States Constitution. *See* 48 U.S.C. § 1561. As discussed earlier, jurisdiction under this statutory ground requires that the contract be performed, at least in part, in the Virgin Islands and that the cause of action arise out of the contract. *Buccaneer Hotel Corp.*, 17 V.I. at 255. Taking all factual allegations of the Complaint as true, the Court must find that HOVIC sent purchase orders containing the indemnification language to all defendants as a prerequisite to the shipment or transfer of goods to the HOVIC refinery and that R & G "expressly agreed to indemnify" HOVIC.[41]

■ Drawing a reasonable inference from the purchase orders, this Court concludes that HOVIC's obligation under the contract, a remittance of the payment for goods purchased from R & G, likely occurred in the Virgin Islands. In addition, causes of action for contractual indemnification and breach of contract necessarily arise out of the contract at issue. So, given the early stage of this litigation and the preliminary nature of this determination, personal jurisdiction is properly based on R & G's contract to supply goods to the Virgin Islands. 5 V.I.C. § 4903(a)(3). The due process considerations are also satisfied, as the

---

[41] (HOVIC Third Am. Third-Party Compl. at 25 ¶ 6, 28 ¶ 8.)

reasoning employed above remains compelling with respect to the contract-related causes of action. An exercise of personal jurisdiction over R & G with regards to Counts III, IV, and V is consistent with the long-arm statute and due process limitations.

## IV. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

 R & G's final ground in its Motion to Dismiss asserts that HOVIC fails to state a claim upon which relief can be granted. *See also* SUPER. CT. R. 7; FED. R. CIV. P. 12(b)(6). At the outset, the Court acknowledges that the standard for granting a motion to dismiss is more stringent than one for a motion for summary judgment. *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 666-67 (S.D. N.Y. 2000) (citations omitted). To avoid transforming this inquiry into one weighing a motion for summary judgment, the Court excludes from its consideration of this section all matters outside the pleadings,[42] including the purchase orders accumulated in Exhibit A, to HOVIC's Opposition. FED. R. CIV. P. 12(b). A court considering a motion to dismiss under Rule 12(b)(6), shall deny the motion unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). In applying this standard, a court shall assume all reasonable factual allegations in the complaint as true and draw all fair inferences from such allegations. *Government of V.I. v. Lansdale*, 172 F. Supp. 2d 636, 649 (D.V.I. App. Div. 2001).

As its primary challenge, R & G argues that HOVIC's pleading fails to allege sufficient causation because it does not account for either potential intervening causes or the absence of negligence.[43] R & G is well within its right to assert these grounds as affirmative defenses, and perhaps, through filing a motion for summary judgment. The standard for granting a motion to dismiss, however, requires that there be no set of facts such that a plaintiff could be entitled to relief. *Conley*, 355 U.S. at 45-46. Having already made similar determinations regarding other

---

[42] *See generally* 5C WRIGHT & MILLER, *supra*, § 1366 at 180 (recognizing potentially admissible pieces of evidence are considered matters outside the pleadings). Allegations furthered in the memoranda in support of and opposition to this motion to dismiss, do not constitute matters outside the pleadings. *Id.* at 182-83.

[43] (R & G Mot. to Dismiss at 9-12.)

third-party defendants, this Court continues to hold that there are facts that can be proven which would entitle HOVIC to relief against R & G.

Regardless of whether R & G was negligent, HOVIC may have a viable cause of action against R & G as pled based on strict liability,[44] as long as there were no intervening or superseding causes. R & G has not carried its burden to prove beyond doubt that HOVIC is not entitled to relief on the basis of its pleadings. Consistent with the spirit of the liberal pleading rules, this Court will not hold HOVIC responsible for anticipating every defense and affirmatively pleading the opposite. *See generally* SUPER. CT. R. 7; FED. R. CIV. P. 8(a). HOVIC need only submit "a short and plain statement of the claim[s] showing that [it] is entitled to relief. ..." FED. R. CIV. P. 8(a). HOVIC did so here.

Alternatively, R & G asserts that the pleadings are general and redundant.[45] If a pleading is vague and ambiguous, this may be a ground for granting a motion to dismiss. 5C WRIGHT & MILLER, *supra,* § 1376 at 309. The difference between the standards for a motion to dismiss and a motion for a more definite statement concerning an allegedly vague and ambiguous pleading is a subtle one. *Id.* The Court need not delineate the difference, however, to arrive at its conclusion. A pleading that is not so impermissibly vague as to prevent the interposing of a good faith denial under Federal Rule 8(b), necessarily is not vague enough to prevent a Court from "making out one or more potentially viable legal theories on which the claimant might proceed." *Id.* R & G's Motion to Dismiss on this basis, then, will be denied.

## V. CONCLUSION

R & G has failed to carry its heavy burden in the instant Motion to Dismiss. This Court properly granted leave to HOVIC to file a third-party complaint and such an action did not violate R & G's due process and equal protection rights. HOVIC's Complaint is properly pled; it is

---

[44] R & G assumes, without basis, that HOVIC may not have a strict liability theory and that an absence of negligence will have some relevance to its motion to dismiss. Given that the Plaintiffs brought strict products liability claims against HOVIC and that those claims were settled, an absence of negligence by R & G will not shield it from liability in at least a common law indemnification setting, where R & G may be liable notwithstanding any absence of negligence. Thus, there are facts where, if they are true as pled, HOVIC would have a cause of action.

[45] (R & G's Mot. to Dismiss at 4.)

not too vague so as to prevent the interposing of an answer with good faith denials, nor does it fail to state a claim upon which relief can be granted. Finally, the Court may exercise personal jurisdiction over R & G with respect to the claims contained in the HOVIC Third-Party Complaint. Having so concluded, this Court denies all relief requested by R & G in an accompanying order.